# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JOSEPH SPINA

      Plaintiff,                                **Case No.:  8:15-CV-02155**

v.

QUALITY ASSET RECOVERY, LLC

      Defendant.

_____/

## <u>MOTION IN LIMINE</u>

COMES NOW, Defendant QUALITY ASSET RECOVERY, LLC, by and through its undersigned counsel, and hereby moves this Honorable Court enter an Order in Limine to exclude all arguments and evidence regarding the following items, on the grounds that they are inadmissible, irrelevant, immaterial, and any probative value of the evidence is substantially outweighed by the danger of unfair prejudice:

### I.      Background/Procedural History

Plaintiff brings this action for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). *See,* DE 1 generally. Plaintiff's FDCPA claim is premised the alleged facts that 1) in March of 2013, Plaintiff underwent elective medical treatment at Hillstrom Facial Plastic Surgery (hereinafter, "HFPS"), 2) at or around the time of receiving the medical treatment, Plaintiff received bill for his treatment, 3) upon receiving the bill for the aforementioned medical treatment, Plaintiff paid HFPS the total amount of the bill, resulting in a zero balance on his account, and 4) HFPS inexplicably sent Plaintiff's account to Defendant for the purpose of collection of a putative, but erroneous, outstanding balance. *Ibid.* at ¶¶ 14-18.

Plaintiff alleges that in October of 2014, he applied for a credit card and his application for the credit card was denied because QAR was reporting multiple delinquent trade-lines to at least one of the three (3) major credit reporting agencies. *Ibid.* at ¶¶ 20-22.

Furthermore, Plaintiff alleges that in or around October 2014, Plaintiff contacted Defendant and spoke with one of Defendant's duly authorized representatives. During the course of the aforesaid telephone call between Defendant and Plaintiff, Defendant informed Plaintiff that he owed a balance of approximately $5,800 on the Debt. In addition, Plaintiff alleges that in or around October 2014, Plaintiff contacted HFPS and engaged in a three-way telephone call with representatives from HFPS and Defendant, and during the course of the aforementioned three-way telephone conference, HFPS confirmed with Plaintiff and Defendant that Plaintiff had paid his bill with HFPS in full, resulting in zero balance. *Ibid.* at ¶¶ 21-29.

Through the instant motion, Defendant seeks an Order from this Court prohibiting Plaintiff from offering any testimony or evidence at trial on the following issues:

1. **Evidence or Testimony of any Prior Claims or Lawsuits**

Pursuant to Florida Evidence Code FRE 402 and 403, Defendant moves to limit the use of any evidence or testimony of Plaintiff and any other witness(es) regarding the use of any prior Fair Debt Collection Practices Act ("FDCPA") and/or Florida Consumer Collection Practices Act ("FCCPA") lawsuits or claims against Defendant to show propensity of the Defendant to violate or allegedly violate the FDCPA and/or the FCCPA. The introduction of any evidence or testimony regarding prior lawsuits or claims is irrelevant and highly prejudicial. Further, the use of any evidence or testimony regarding said claims or lawsuit would only tend to show Defendant's propensity to allegedly violate the FDCPA and/or FCCPA, and would not be

relevant to Plaintiff proving his alleged violations of the FDCPA against the Defendant.  *See, Cusmano, v. NRB, Inc.,* 1998 U.S. Dist. LEXIS 15418 (N.D. Ill. 1998).

### 2.  Credit Reports are Not Self-Authenticating

Defendant moves to limit the use of any evidence of Plaintiff regarding Plaintiff's use of any credit reports received from any credit reporting agency or any other entity as Plaintiff has not authenticated these documents in any way whatsoever, and these documents are not self-authenticating pursuant to Fla Stat. §90.902 and FRE §901, §902. *See, Gannon vs. IC System, Inc.*, 2009 WL 3199190 (S.D. Fla. 2009).  Credit reports are only admissible under the business records exception when there is testimony from someone at the credit bureau with knowledge of how the reports are compiled.  *Ibid.* citing *United States v. DeFrisco*, 441 F.2d 137, 139 (5th Cir. 1971).

### 3.  Credit Reports and Testimony Regarding Credit Reports are Hearsay

Defendant moves to limit the use of any evidence or testimony by Plaintiff or any other person/witness regarding Plaintiff's use of any credit reports received from any credit reporting agency or any other entity as hearsay as the credit reports would be offered to prove the truth of the matter asserted pursuant to Fed.R.Evid. 801(c) and would also be irrelevant. Further, Plaintiff's testimony or any other witnesses' testimony regarding what the witness read on the credit reports is double hearsay.  *Gannon vs. IC System, Inc.*, 2009 WL 3199190 (S.D. Fla. 2009); *Cruz v MRC Receivables Corp.*, 563 F. Supp. 2d 1092 (N.D. Cal. 2008); *Baker v. Capital One Bank,* CV 04-1192-PHX-NVW, 2006 WL 173668 (D. Ariz. Jan. 24, 2006), aff'd sub nom. *Baker v. Equifax Info. Services, LLC,* 346 Fed. Appx. 219 (9th Cir. 2009).

Neither Plaintiff nor any other witness other than the appropriate records custodian of the entity that prepared the credit report is qualified to testify regarding the procedures for

compilation and creation of the information on the credit reports. *Elizarraras v. Bank of El Paso*, 631 F .3d 366, 374 n. 24 (5th Cir.1980)[1] ("qualified witness must be one with knowledge of the declarant's business"). Credit reports are only admissible if there is testimony from someone at the credit bureau with knowledge of how the reports are compiled. *See*, *Gannon, supra* citing, *United States v. DeFrisco*, 441 F.2d 137,140 (5th Cir.1971).

### 4.  Evidence or Testimony regarding damages to Plaintiff's Credit Rating

Defendant moves to limit the use of any evidence or testimony of Plaintiff and/or any other witness(es) regarding damages to Plaintiff's Credit Rating, Credit Score, or Credit Reputation.  Any evidence or testimony of Plaintiff and any other witness(es) regarding damages to Plaintiff's Credit Rating, Credit Score, or Credit Reputation would be irrelevant and hearsay. Plaintiff has no first-hand knowledge of any damages to his credit rating, credit score, or credit reputation. Instead, Plaintiff's knowledge would necessarily have been obtained from review of his own credit report or communications from third parties based on the third party's review of Plaintiff's credit report. As such, any testimony from Plaintiff regarding damages to his credit rating, credit score, or credit reputation would be hearsay. *See*, *Gannon, supra*.

### 5.  Evidence or Testimony that Plaintiff's application for a loan was denied due to Defendants credit reporting.

Defendant moves to limit the use of any evidence or testimony of Plaintiff regarding Plaintiff being denied a loan due to QAR's alleged credit reporting, as any such evidence by Plaintiff would be hearsay. More specifically, Plaintiff would know the reason he was denied a loan only because a third party informed him of those reasons. Hence, the Plaintiff's testimony would be based on hearsay. As the testimony would be offered to prove the truth of the matter

---

[1] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

asserted, i.e. that Plaintiff was denied a loan do to Defendant's credit reporting, the testimony is inadmissible.

**6.  <u>Evidence or Testimony regarding the Contents of Documents produced by Third-Parties in Response to Plaintiff's Subpoenas.</u>**

Defendant anticipates that Plaintiff will attempt to introduce testimony and/or evidence regarding the contents of documents that were received by Plaintiff via subpoena from Citibank, PNC Bank, and Ally Bank.  Although a document is authenticated, the statements contained within the documents may be inadmissible due to the application of the rule which prohibits the use of hearsay evidence.  *Bouriez v. Carnegie Mellon Univ.*, CIV.A. 02-2104, 2005 WL 2106582, at *7 (W.D. Pa. Aug. 26, 2005).  Hearsay is any statement offered for the truth of the statement or matter asserted. Fed.R.Evid. 801. A statement offered for its truth is inadmissible, unless it falls under a recognized exception to the prohibition against hearsay. *Id.* Non-hearsay statements are statements offered for a purpose other than the truth of the statement's contents, and such statements are fully admissible for that intended purpose. *Id.*  Assuming for a moment for the sake of brevity only that Plaintiff has properly authenticated the documents, nevertheless the contents of said documents are hearsay as no proper person/entity has substantiated the contents of the subpoenaed records nor has Plaintiff listed any witness capable of doing so.

Moreover, upon information and belief, Plaintiff intends to attempt to introduce as evidence certain records of "various lenders" such as Ally Bank, Citibank, PNC Bank, and JPMorgan Chase Bank which .  Those records include information and documents allegedly obtained by the lenders from one or more credit reporting agencies. While the lenders may be able to authenticate their own documents, the contents of those documents are nonetheless "hearsay" to the extent they include or are based on information communicated to the lenders by a third party or consist of credit reports created by third parties.

**7.** **Evidence or testimony regarding any conversation with an alleged agent Defendant whom Plaintiff cannot identify as an employee/agent of Defendant.**

Defendant anticipates that Plaintiff will attempt to offer evidence and/or testimony regarding conversations that may have taken place with Defendant in which Plaintiff cannot identify as actually have taken place with Defendant. For instance, Plaintiff testified at his deposition as follows:

> Q. Just generally, can you tell me about the first call that you remember having with QAR?
>
> A. I didn't know it was QAR. It was just somebody trying to reach me to get me to respond about some questions and they didn't identify themselves. And then I found out later it was QAR that has been trying to contact me and going through my office and my cellphone.
>
> Q. How did you find out that it was QAR that called you for lack of a better word in the first phone call?
>
> A. I called the doctor's office because the collection gentleman told me that it was regarding the doctor's office. And I spoke to the business manager, and she informed me that they use QAR and Cape Financial Services. That was the first time I've heard of that description, the QAR.

*See,* Exhibit "A" - Deposition of Plaintiff p. 12, lines 4-20.

As Plaintiff has no firsthand knowledge of the entity calling him, and merely relies on what some third party allegedly told him, Plaintiff cannot offer testimony or evidence relative to calls with Defendant that he cannot establish were actually calls with the Defendant, QAR. Such testimony is nothing more than hearsay.

**8.  Evidence or Testimony of alleged Three-Way Phone Calls involving "Maisol", "Ellie" or "Dr. Hillstrom," Plaintiff, and QAR.**

Defendant anticipates that Plaintiff will attempt to offer testimony and/or evidence that person(s) who Plaintiff identifies as "Maisol" and/or "Ellie" and/or "Dr. Hillstrom" participated in a telephone conference with an agent of Defendant, engineered by Plaintiff. That is, it is anticipated Plaintiff would testify that he called "Ellie", "Maisol" and/or "Dr. Hillstrom" and then, conferenced in an agent of Defendant on the case. It appears that Plaintiff intends to rely on the alleged self-identification of "Maisol", "Ellie" and "Dr. Hillstrom" made during alleged calls that took place to prove Defendant spoke with Plaintiff and "Maisol" and/or "Ellie" and/or "Dr. Hillstrom" and was advised by "Maisol" and/or "Ellie" and/or "Dr. Hillstrom" Plaintiff did not owe the debt. The advisory committee notes to Fed. R. Evid. 901(a)(6) make clear that, "[t]he cases are in agreement that a mere assertion of his identity by a person talking on the telephone is not sufficient evidence of the authenticity of the conversation and that additional evidence of his identity is required." *See,* Fed. R. Evid. 901(b)(1) advisory committee's note.

To be clear, without additional evidence through direct testimony of the other alleged participants in the telephone conversation, the alleged substance of the conversations is inadmissible hearsay. The rule is clear: "the mere assertion of the identity by a person talking on the telephone is not by itself sufficient to authenticate that person's identity." *In re Maurer*, 267 B.R. 639, 648 (Bankr. M.D. Fla. 2001), *amended,* 271 B.R. 207 (Bankr. M.D. Fla. 2002)(internal citations omitted), *see also United States v. Rodriguez*, 427 Fed. Appx. 784, 790 (11th Cir. 2011)(unpublished). As a result, Plaintiff cannot satisfy the requirements necessary to have admitted as evidence testimony that the persons with whom he and Defendant were speaking on the telephone were agents of the creditor at issue.

Self-identification in a telephone conversation is insufficient to overcome the evidentiary prohibition on hearsay in the absence of other evidence the self-identifying person was who he/she claimed to be during the conversation. Otherwise, a person claiming to be "President Trump" during a telephone call would be presumed to be The President even in the absence of evidence demonstrating the participant was actually The President. A party must prove the self-identifying party was actually the party he/she claims to be during the call. *See, Bradford v. HSBC Mortg. Corp.*, 829 F. Supp. 2d 340, 346 (E.D. Va. 2011) ("the statement that an HSBC representative named 'Susan' made to Bradford over the telephone is inadmissible hearsay and therefore 'cannot be considered on a motion for summary judgment.' This statement suffers from a fatal first-level hearsay problem given that Bradford cannot identify who 'Susan' was and thus cannot establish that her statement was a party-opponent admission.") This same inability to establish that "Maisol" and/or "Ellie" and/or "Dr. Holliston" were who each allegedly claimed she/he was during the conversation prohibits Plaintiff from testifying regarding the purported contents of any three way telephone call between Defendant, Plaintiff, and "Maisol" and/or "Ellie" and/or "Dr. Hillstrom." Simply stated, there is no evidence (e.g. testimony from "Maisol" "Ellie" or "Dr. Hillstron") demonstrating the purported "Maisol" and/or "Ellie" and/or "Dr. Hillstrom" were connected to the medical facility wherein Plaintiff had medical services provided.

**9. <u>Evidence or testimony that after Plaintiff told Defendant he disputed the debt, that Defendant failed to report the debt as disputed as it had no duty to "update" credit reporting after initial reporting of the debt.</u>**

Defendant anticipates that Plaintiff will attempt to offer testimony, argument or evidence that after he disputed the debt(s) with Defendant, Defendant failed to update his dispute with the Credit Reporting Agencies ("CRA's"). The fact of the matter is Plaintiff's account was referred

to Defendant in March 2014.  Defendant mailed its initial communication letter which contained its validation notice as required under 15 U.S.C §1692g.  Defendant's initial communication letter was not returned as undeliverable.  More than thirty (30) days after Plaintiff's account(s) were referred to Defendant for collection, Defendant reported Plaintiff's account(s) to the CRA's.  Plaintiff did not dispute the debt nor request validation of the debt until nearly seven (7) months after Defendant mailed its initial communication letter and after Defendant had already reported the debt to the CRA's.

Because Defendant had already reported Plaintiff's debt(s) to the CRA's when Plaintiff disputed his debt(s), Defendant was under no affirmative duty to update the status of the debt(s) to the CRA's.  *See, Rogers v. Overton, Russell, Doerr & Donovan, LLP, No.* 1:16-cv-00784, 2017 WL 570811 (N.D.N.Y. Feb. 13, 2017); *King v. Asset Acceptance, LLC*, 452 F. Supp. 2d 1272, 1282 (N.D. Ga. 2006); *Rios v. Gen. Serv. Bureau*, 8:09CV320, 2010 WL 323533 (D. Neb. 2010).

10. **Evidence or testimony 1) that on multiple occasions Defendant initiated telephone calls to Plaintiff's place of employment, 2) that Defendant spoke with employees at Plaintiff's place of employment, and 3) informed Plaintiff's employees that it needed to speak with Plaintiff regarding a "business matter of extreme importance".**

In his Complaint in paragraph 34, Plaintiff alleges that "[o]n multiple occasions, Defendant has initiated telephone calls to Plaintiff's place of employment and spoken with employees at Plaintiff's place of employment and informed them that it needed to speak with Plaintiff regarding a "business matter of extreme importance."  Defendant anticipates that Plaintiff will attempt to offer testimony and/or evidence that such allegations occurred. However, such allegations amount to nothing more than hearsay as Plaintiff has no firsthand

knowledge that these telephone calls occurred, and has provided no testimony from witness nor offered any witnesses to testify as to what occurred during said alleged telephone calls.

Moreover, the alleged fact that Defendant may have identified itself on calls with Plaintiff's employees is not evidence that Defendant is the entity that placed said alleged telephone calls. *In re Maurer*, 267 B.R. 639, 648 (Bankr. M.D. Fla. 2001), *amended,* 271 B.R. 207 (Bankr. M.D. Fla. 2002)(internal citations omitted), *see also United States v. Rodriguez*, 427 Fed. Appx. 784, 790 (11th Cir. 2011)(unpublished).   As a result, Plaintiff cannot satisfy the requirements necessary to have admitted as evidence testimony that the persons with whom his employees and alleged agents of Defendant were speaking on the telephone were agents of the Defendant.

11. **Evidence in support of alleged damages related to Plaintiffs' alleged emotional distress, physical distress and/or medical expenses.**

All of Plaintiffs' claims in the instant case arise under the Fair Debt Collection Practices Act, ("FDCPA"). *See,* DE 1, generally. Defendant seeks exclusion of all evidence offered in support of damages related to Plaintiffs' alleged emotional distress, physical distress and/or medical expenses pursuant to Federal Rules of Evidence 401, 402, 403, 701, 702 and 901.

In the Eleventh Circuit, a "medical causation issue presents a technical and scientific issue that requires the specialized knowledge of an expert medical witness." *See Wingster v. Head*, 318 Fed. Appx. 809, 815 (11th Cir. 2009)(citing Fed.R.Evid. 701, 702; *Webster v. Offshore Food Serv.,* 434 F.2d 1191, 1193 (5th Cir.1970)). In the instant case, it is anticipated that Plaintiffs will seek to introduce evidence in support of allegations that Defendant's conduct caused Plaintiff emotional and physical distress, which in turn caused Plaintiff to incur medical expenses. *See,* "Exhibit A" at ¶¶ 12 – 31; 73 – 74. However, Plaintiffs have not produced nor disclosed to Defendant any medical evidence or expert testimony demonstrating any causal link

between Defendant's alleged conduct and any emotional or physical distress suffered by Plaintiffs. Accordingly, any evidence sought to be offered by Plaintiffs in attempt to obtain emotional distress damages must be excluded. *See, e.g., Ugarte v. Sunset Const., Inc.*, 8:07CV735T23EAJ, 2008 WL 4723600, at *3 (M.D. Fla. Oct. 21, 2008); *Titus v. Com. Recovery Sys., Inc.*, 8:13-CV-00567-T-27, 2014 WL 55016, at *2 (M.D. Fla. Jan. 7, 2014)

In *Ugarte*, the plaintiff sought emotional distress damages under the FDCPA and FCCPA after obtaining a default judgment the defendant. *Id.*, 2008 WL 4723600 at *3. In refusing to award the plaintiff any emotional distress damages, the Court held:

> Plaintiff testified that she suffered from depression and attempted to commit suicide due to the stress of defending against the Murtha Defendants' state lawsuit. Plaintiff has not provided any medical evidence or expert testimony showing a causal link between her suicide attempt and the state lawsuit[.]

*Id.*

Similarly, in *Titus*, the Court declined to award emotion distress damages under the FDCPA and FCCPA. *Id.*, 2014 WL 55016, at *2. Specifically, the *Titus* Court held:

> Outside of her blanket statement that she suffered mental anguish as a result of Defendant's actions, Plaintiff failed to supply any competent evidence, such as medical records or expert testimony, that would support her claim for actual damages for mental anguish or emotional distress or even provide an elaboration as to the negative effects she experienced as a result of Defendant's actions. Rather, Plaintiff simply offers a one-sentence explanation claiming that she suffered mental anguish because she feared garnishment of her Social Security income and Medicare benefits. Without more, the record before the Court does not establish a basis for compensating Plaintiff for any actual damages.

*Id.*

In the instant case, as in *Titus*, Plaintiff has "failed to supply any competent evidence, such as medical records or expert testimony, that would support a claim for actual damages for

mental anguish or emotional distress." *Id.*, 2014 WL 55016, at *2. Specifically, Plaintiff did not disclose any expert witnesses or reports, and the time for doing so has passed. *See,* DE 34 at p. 4. Moreover, Plaintiff did not disclose any medical records in their Rule 26 Disclosures and listed no witnesses capable of testifying as to medical causation or authenticating medical records. *See,* DE 33; DE 46. Accordingly, as in *Ugarte*, Plaintiff has "not provided any medical evidence or expert testimony showing a causal link between" any alleged emotional or physical distress and Defendant's alleged conduct.

Moreover, the "symptoms" are insufficient to warrant an award of actual damages as a matter of law. *See, e.g., Montgomery v. Fla. First Fin. Grp.,* No. 6:06–cv–1639–Orl–31 KRS, 2008 WL 3540374, at *9 (M.D.Fla. Aug.12, 2008)(finding an award of actual damages not appropriate under the FDCPA or FCCPA when the plaintiff "suffered some temporary loss of appetite, sleeplessness and worry" after being threatened with arrest and jailing multiple times); *Smith v. Royal Oak Fin. Services, Inc.*, 3:11-CV-543-J-34JRK, 2012 WL 3290153, at *4 (M.D. Fla. June 18, 2012) *report and recommendation adopted,* 3:11-CV-543-J-34JRK, 2012 WL 3290151 (M.D. Fla. Aug. 13, 2012)(refusing to award "actual damages as a result of [] illegal collection communications by the Defendant in the form of anger, anxiety, emotional distress, fear, frustration, humiliation, and embarrassment").*Marchman v. Credit Solutions Corp.*, 6:010-CV-226-ORL-31, 2011 WL 1560647, at *10 (M.D. Fla. Apr. 5, 2011) *report and recommendation adopted,* 6:10-CV-226-ORL-31, 2011 WL 1557853 (M.D. Fla. Apr. 25, 2011)(refusing to award actual damages in FDCPA case where "Plaintiff's affidavit, describing her symptoms, is vague and largely conclusory").

Because it is well settled in the Eleventh Circuit that a "medical causation issue presents a technical and scientific issue that requires the specialized knowledge of an expert medical

witness", and because Plaintiff failed to disclose any such expert, Plaintiff must be precluded from offering any evidence at trial in support of an award of damages related to emotional distress, physical distress or medical expenses. *Wingster*, 318 Fed. Appx. at 815.

### 12. Evidence or Testimony or Argument intended to elicit prejudice, sympathy or excessive motion

Counsel shall avoid making arguments indented to improperly elicit prejudice, sympathy or excessive emotion from the jury (*Walt Disney v. Blallock* 640 So. 2d 1156 (Fla. 5th DCA 1994); *Fowler v. North Goldring Corp.* 582 So. 2d 802 (Fla. 1st DCA 1981).  The probative value of the introduction of such evidence is outweighed by its intentional prejudice and it is irrelevant to the factual issues to be determined in this matter.  Section 90.402, 90.403, Florida Evidence Code.

### 13. Evidence or Testimony or Argument regarding "Sending a Message"

Counsel shall not make any argument that urges the jury to "send a message" to anyone with its verdict or that refers to the jury as being the "conscience of the community".  *Maercks v. Birchansky* 549 So. 2d 199 (Fla. 3rd DCA 1989).

### 14. Evidence or Testimony or Argument relative to asking the jury to place itself in the place of the Plaintiff.

Counsel shall avoid making arguments that place the jury, or ask the jury to place itself, in the place of the Plaintiff for the purpose of determining what award they would want in a similar situation.  *Goutis v. Express Transport, Inc.*, 699 So. 2d 757 (Fla. 4th DCA 1996), *disapproved only as to standard for review*, *Murphy v. International Robotics Systems*, 766 So. 2d 1010 (Fla. 2000); *Metropolitan Dade County v. Zapata*, 601 So. 2d 239 (3rd DCA 1992).

## Certificate of Good Faith

**Pursuant to Local Rule**, counsel has attempted in good faith to resolve this issue prior to filing the instant Motion; Plaintiff's has stated that he has no objections to Number 1 and 14 listed above, but objects to Number 2 through 13.

Respectfully submitted by:

 /s/ Dale T. Golden
DALE T. GOLDEN, ESQ.
Florida Bar No.: 0094080
 /s/ Charles J. McHale
CHARLES J. MCHALE, ESQ.
Florida Bar No.: 0026555
**GOLDEN SCAZ GAGAIN, PLLC**
201 North Armenia Avenue
Tampa, Florida 33609-2303
Phone: (813) 251-5500
Fax: (813) 251-3675
dgolden@gsgfirm.com
cmchale@gsgfirm.com
Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 22, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

 /s/ Dale T. Golden
DALE T. GOLDEN, ESQ.
Florida Bar No.: 0094080