**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| **JOSEPH SPINA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **8:15-cv-02155-CEH-TBM** |
| | ) | |
| **v.** | ) | |
| | ) | **Magistrate Judge McCoun** |
| **QUALITY ASSET RECOVERY, LLC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT**

**PURSUANT TO RULE 59(e)**

NOW COMES the Plaintiff, JOSEPH SPINA, by and through his attorneys, SMITHMARCO, P.C., and for his Motion to Alter or Amend Judgment, Plaintiff states as follows:

## I.   INTRODUCTION

Plaintiff filed his Complaint against Defendant for its violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, (hereinafter, "FDCPA"). On March 6, 2017, this matter proceeded to trial and four (4) violations of the FDCPA were presented to the jury, one of which was Defendant's alleged violation of §1692e(8).

At the conclusion of the evidence Defendant made an oral motion for judgment as a matter of law on Plaintiff's claim under §1692e(8). This Court reserved ruling on the motion and permitted Plaintiff's claim under §1692e(8), among others, to go to the jury.

In addition to finding in favor of Plaintiff on his claim that Defendant violated §1692e(2)(A), the jury also found that Defendant violated §1692e(8), finding "by a preponderance of the evidence that Defendant communicated or threatened to communicate to

1

any person credit information which is know or which should be known to be false, including the failure to communicate that a disputed debt is disputed." (Verdict Form, ECF No. 62).

Notwithstanding the jury's verdict, on May 26, 2017, this Court granted Defendant's motion for judgment as a matter of law. As noted below, however, Defendant's motion for judgment as a matter of law was without merit and the evidence adduced at trial unequivocally supported the jury's finding in favor of Plaintiff on his claim under §1692e(8). As such, Plaintiff now moves this Court to alter and amend the judgment entered in favor of Defendant on Plaintiff's claim under §1692e(8) and to reinstate the jury's verdict on this claim.

## II.   STANDARD OF REVIEW

The Court's reversal of the jury's verdict on Plaintiff's §1692e(8) claim is an action reserved only for those extraordinary circumstances in which there exists no legally sufficient evidentiary basis for finding in favor of the nonmoving party such that no reasonable jury could find in favor of the nonmoving party.

When presented with a Rule 50 motion, courts must review all of the evidence and draw *all reasonable inferences* in favor of the nonmoving party. (Emphasis added). *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 148–151 (2000). The evidence of the non-movant must be believed. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2513 (1996). The motion must be denied unless the non-moving party presented no legally sufficient evidentiary basis for a reasonable jury to find for it. *Howard v. Walgreen Co., d.b.a Walgreens Pharmacy*, 605 F.3d 1239. (11th Cir. 2010).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves,* 530 U.S. at 150*; McGinnis v. American Home Mortgage Servicing, Inc.*, 817 F.3d 1241 (11th Cir. 2016) ("we

have stressed [that] '[i]t is the jury's task – not [the court's] – to weight conflicting evidence and inferences, and determine credibility of witnesses."). The "jury's verdict must be upheld if it is supported by substantial evidence, which is ***evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion***." (Emphasis added). *Pavao v. Pagay*, 307 F.3d 915 (9th Cir. 202). The Court must not "substitute its view of the evidence for that of the jury." *Id.*, *quoting Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (internal quotations omitted).

### III.   ARGUMENT

At the conclusion of the evidence, Defendant presented its motion for judgment as a matter of law. Defendant's argument was predicated on the principle that the FDCPA does not impose an affirmative duty on debt collectors to update the status of each debt that it has previously reported. Further, Defendant argued that no evidence was introduced to support Plaintiff's contention that Defendant voluntarily continued to report credit information to the credit reporting agencies *after* receiving notice of Plaintiff's dispute.

As to the legal issue posited by Defendant, Defendant has conflated the issue of no reporting by a debt collector subsequent to being notified of a dispute with the issue of any subsequent reporting. Indeed, Plaintiff concedes that the case law offered by Defendant in support its motion for judgment as a matter of law holds that debt collectors have no affirmative obligation to report credit information. But, even a cursory review of each of the cases promulgated by Defendant shows that the factual backdrop for their holdings is in stark contrast to the facts of the present case.

As is evident, the true dispute raised by Defendant's motion for judgment as a matter of law is not a legal but rather a factual one. Defendant steadfastly argued that Plaintiff failed to

3

offer any evidence to support his contention that Defendant reported the debts to the credit

reporting agencies after he informed Defendant of his dispute.  A review of the trial record and

the evidence adduced at trial, both through documentary exhibit and testimony, reveals that

considerable evidence was introduced to show that Defendant continued to report information to

the credit reporting agencies after Plaintiff's dispute, indeed on a monthly basis.   While

Defendant may dispute the veracity of the evidence and wish for the evidence to show otherwise,

when one reviews the evidence adduced at trial, and all inferences drawn therefrom, taken in the

light most favorable to the nonmoving party, judgment as a matter of law for Defendant becomes

untenable.

**A. Plaintiff concedes that debt collectors have no affirmative obligation to report credit information to the credit reporting agencies.  Unlike the cases relied upon by Defendant in its Motion for Judgment, in the present case Defendant voluntarily elected to report information to the credit reporting agencies after receiving notice of Plaintiff's dispute.**

While Plaintiff concedes that a debt collector has no affirmative obligation to report

credit information to third parties, that does not result in the exculpation of liability that

Defendant sought by its motion for judgment as a matter of law and granted by this Court.

In the present case, Defendant voluntarily elected to report credit information to the

CRAs subsequent to being notified of Plaintiff's dispute.  This fundamental fact is diametrically

opposed to the facts of each of the cases posited by Defendant.

### 1. *Wilhelm v. Credico et al*

Defendant's principle argument is that it had no duty to re-report Plaintiff's debts as

disputed and for this proposition Defendant largely relies on the Eighth Circuit's decision in

*Wilhelm v. Credico, Inc.,* 519 F.3d 416 (8th Cir. 2008).

In *Wilhelm* the plaintiff's credit card debt was assigned to Pinnacle Credit Services for

collection; it was subsequently assigned to Credico for collection.  Upon receipt of a Notice of

Lawsuit letter from Credico, Wilhelm disputed the debt to Credico.  Pinnacle reported the debt as

in collection but did not report the debt as being disputed.  *Id.*

Wilhelm  argued  that  §1692e(8)  imposed  an  affirmative  duty  on  the  defendants  to

subsequently report that he had disputed his debt.  In evaluating Wilhelm's contention the court

noted:

> *"'Communication' is defined as 'the conveying of information regarding a debt directly*
> *or indirectly to any person through any medium." § 1692a(2).  Reading these provisions*
> *together, as we must, the relevance of the portion of <u>§ 1692e(8)</u> on which Wilhelm relies -*
> *"including the failure to communicate that a disputed debt is disputed" - **is rooted in the***
> ***basic fraud law principle that, if a debt collector elects to communicate "credit***
> ***information" about a consumer, it must not omit a piece of information that is always***
> ***material, namely, that the consumer has disputed a particular debt.** This interpretation*
> *is confirmed by the relevant part of the Federal Trade Commission's December 1988*
> *Staff Commentary on the Fair Debt Collection Practices Act:*
>
> 1.    *Disputed debt. If a debt collector knows that a debt is disputed by the consumer ...*
>       *and reports it to a credit bureau, he must report it as disputed.*
>
> 2.    *Post-report dispute. When a debt collector learns of a dispute after reporting the*
>       *debt to a credit bureau, the dispute need not also be reported.*
>
>       *FTC <u>Staff Commentary, 53 Fed.Reg. 50097-02, 50106 (Dec. 13, 1988)</u>(emphasis*
>       *added), followed in Black v. Asset Acceptance, LLC, 2005 U.S. Dist. LEXIS 43264*
>       *at * 12-13 (N.D.Ga.2005), and in <u>Hilburn v. Encore Receivable Mgmt., Inc., 2007</u>*
>       *<u>WL 1200949 at *4 (D.Or.2007).</u>"*

*Wilhelm v. Credico, Inc., et al*, 519 F.3d 416, 418 (8th Cir. 2008). (Emphasis added)

Wilhelm conceded that he presented ***no*** evidence that Pinnacle communicated ***any*** credit

information about Wilhelm to ***any*** person within the one year limitations period.  As to Credico,

Wilhelm alleged that Credico violated §1692e(8) by failing to report his dispute of the debt to

Pinnacle, the court held that Wilhelm presented ***no*** evidence that Credico "communicated ***any***

credit information to Pinnacle."   Moreover, the court noted that the only evidence of any

communication of credit information by Credico to Pinnacle was an affidavit by a Credico

employee that Credico immediately reported the dispute to Pinnacle, which necessarily defeated Plaintiff's claim against Credico.

The key factual issue in *Wilhelm*, is that the surviving defendant in the plaintiff's claim, i.e., Credico, had at no time reported any credit information about Wilhelm to any third party. Under this factual backdrop, Wilhelm urged the court to find that Credico had a duty to affirmatively report the dispute, a claim rejected by the court.

### 2. *Llewellyn v. Allstate Home Loans, Inc. et al*

As is true of *Wilhelm*, the court's holding in *Llewellyn* is not as far reaching as Defendant would have had this Court believe.

In *Llewellyn* the plaintiff brought suit against Ocwen Loan Servicing, LLC, a mortgage servicing company, and Castle Meinhold & Stawiarski, LLC (CMS), the law firm retained to commence foreclosure proceedings. *Llewellyn v. Allstate Home Loans, Inc. et al*, 711 F.3d 1173 (10th Cir. 2013).

Among his many claims, Llewellyn argued that CMS failed to reverse Ocwen's reporting of negative credit information to the credit reporting agencies and which CMS knew was in error. The court noted "Plaintiff's apparent assertion that §1692e(8) imposed an affirmative duty on CMS to disclose to the CRAs he had disputed the debt and take steps to have Ocwen's reporting reversed" and held that no such duty exists. *Id.* at 11188

Effectively, Llewellyn was arguing that a third party (i.e., CMS) that had reported **nothing** to **anyone** should be obligated to affirmatively correct the credit reporting of another (i.e., Ocwen).

The court held: "We agree with the Eighth Circuit's interpretation of § 1692e(8) that a debt collector does not have an affirmative duty to notify CRAs that a consumer disputes the

debt *__unless__* the debt collector knows of the dispute and *__elects__* to report to a CRA.  Because it is undisputed CMS never reported to a CRA, it was under no obligation to inform the CRAs the debt was disputed."

As was the case in *Wilhelm*, the target of Llewellyn's claim was an entity that had not reported any credit information regarding the plaintiff and yet was being targeted for not affirmatively reporting the plaintiff's dispute.

### 3.   *Gordon v. Syndicated Office Systems*

In *Gordon v. Syndicated Office Systems*, LLC, the plaintiff disputed his debt to the defendant subsequent to the defendant's reporting of said debt to the CRAs.  *Gordon v. Syndicated Office Systems*, LLC,  2017 WL 1134489 (N.D. IL. 2017).

Plaintiff contended that the defendant violated §1692e(8) because credit reports subsequent to the date of Plaintiff's dispute did not reflect the debt as being disputed.  Perhaps not surprisingly, the defendant argued that "there is no affirmative obligation under the FDCPA for a debt collector, after becoming aware of a dispute, *to update* the information" that it may have *already* reported to a credit reporting agency."  *Id.* at 2.

The plaintiff urged the court to interpret §1692e(8) to impose a continuing duty on debt collectors to advise credit reporting agencies that a debt has been disputed, even when the dispute occurs after the debt collector reports the debt *and* the debt collector has *not* reported *after* dispute, an argument rejected by the court.  *Id.* at 3.

The court noted: "Plaintiff makes no factual allegations against defendant other than *inaction* after she disputed the debt that defendant had previously reported to a credit reporting agency" distinguishing the plaintiff's claims from those raised by the plaintiff in *Acosta v. Campbell* in which the plaintiff's claims "survived dismissal where, unlike here, debt was

reported *after* dispute."  *Id.* at 3, citing to *Acosta v. Campbell,* 2005 U.S. Dist. LEXIS 39889, *43-44 (M.D.Fla. 2005).

> **4. Rogers v. Overton, Russell, Doerr & Donovan, LLP**

In *Rogers v. Overton, Russell, Doerr & Donovan, LLP*, the defendant credit reported the plaintiff's debt in 2014; on April 6, 2016 Plaintiff sent a letter to dispute the debt.  On June 1, 2016, the plaintiff noted that the debt continued to be reported and was not being reported as having been disputed.  2017 WL 570811 (N.D. New York, 2017).

As was the case in *Wilhelm, Llewellyn*, and *Gordon*, the plaintiff argued that §1692e(8) requires that a debt collector be compelled to take action that it otherwise had no intention of taking.  The plaintiff urged the court to find that the defendant violated the FDCPA because it did not update its reporting of the plaintiff's debt to reflect the fact that the plaintiff had disputed the debt, albeit two years later.  The court noted that §1692e(8) "applies once a debt has been disputed and prevents debt collectors from 'communicat[ing] the debtor consumer's credit information to others without disclosing the dispute'...It does not impose an affirmative duty on debt collectors to update the status of each debt it has reported."

As with the other cases delineated above, and relied upon by Defendant, the court held that the defendant had no affirmative post-reporting duty to communicate a dispute.  That, however, does not equate to the voluntary election by a debt collector to continue to report a disputed debt and fail to report the debt as disputed.

**B.** **The facts adduced at trial show that, unlike any of the cases relied upon by Defendant and delineated above, Defendant *voluntarily elected* to take post-dispute action to report information to the credit reporting agencies, i.e., *subsequent* to being notified in October 2014 that Plaintiff disputed the debts.**

1. **The Credit Report – Plaintiff's Experian Credit Report Dated May 23, 2015**

Plaintiff's Experian Credit Report, dated May 23, 2015 was admitted into evidence as Plaintiff's Trial Exhibit 6.  (See ECF No. 64); the exhibit was admitted *in toto*.  Indeed, such was acknowledged by this Court at the time of its admission: "If the credit report comes in, then what's contained in it is going to be in evidence."  (Trial Tr. 21:10-11, March 6, 2017, ECF No. 83).  Further, this was borne out by subsequent commentary from this Court during the course of the direct examination of Plaintiff wherein Plaintiff was permitted to read the content of Exhibit 6 into evidence.  (See Trial Tr. 28:7-8, March 6, 2017, ECF No. 83).

Through this Exhibit, and subsequent testimony pertaining to the exhibit, the jury received evidence that Defendant was reporting seven (7) debts to one or more credit reporting agency, that the debts were "Last Reported" in May 2015 and that the balance on each of the debts remained "past due as of May 2015".  *Id.*  Moreover, the jury received evidence that the seven (7) debts that were not owed by Plaintiff, and that had been disputed by Plaintiff in October 2014, were being reported by QAR to the credit reporting agencies without being reported as being disputed.

2. **The testimony of Kenneth Loftis, QAR's Director of Operations, further evinces QAR's election to continue to report Plaintiff's debts to the credit reporting agencies AFTER being notified of Plaintiff's dispute.**

The fundamental distinction between the facts of the present case and the facts of each one of the cases relied upon by Defendant in its motion for judgment as a matter of law is that where the defendants in those cases takes took no affirmative action to report, or to continue to report, the debt(s) as issue, in the present case, QAR *voluntarily elected to continue to report*

information to the credit reporting agencies *after* being notified by Plaintiff that he disputed the debt. This distinction is fatal to Defendant's contention that it was entitled to judgment as a matter of law and serves as the justification for this Court to alter and amend its judgment in favor of Defendant on this issue.

The following testimony evinces the principle delineated above:

i.    QAR reports accounts to various credit reporting agencies. (Trial Tr. 24:13-14, March 7, 2017, ECF No. 84).

ii.   The person that is responsible for reporting the debts at QAR is Kenneth Loftis; he runs the batch process that submits the accounts. (*Id.* at 25:2-5).

iii.  The batch process collects account information and creates a data file that is electronically filed with the credit reporting agencies. (*Id.* at 25:19 to 26:4).

iv.   Account information collected from QAR's computer system, Collect One, is compiled into a data file and the data file is communicated to the credit reporting agencies, and then "the information that the credit reporting agencies subsequently report is the information that [QAR] communicated to them." (*Id.* at 26:5-12).

v.    As QAR's Director of Operations, Mr. Loftis has been reporting credit information to the credit reporting agencies using the batch process for 14 years. (*Id.* at 47: 13-17).

vi.   Mr. Loftis is familiar with the process; he is familiar with how the information that [QAR] reports through the batch process is represented on a credit report. He has seen credit reports; he is familiar with credit reports; he knows the information that QAR had with regards to Mr. Spina's accounts. (*Id.* at 48:8-18).

vii.   During the course of his direct examination, Mr. Lotfis was shown Exhibit 6, in evidence, (i.e., Plaintiff's Experian credit report dated May 23, 2015), and was asked a series of questions regarding the content of the credit report, namely the seven (7) accounts being reported by QAR.   Mr. Lotfis testified that the information reflected on Plaintiff's credit report relative to the 7 QAR accounts was information that WAR communicated to the credit reporting agencies.  (Trial Tr. 52:6-12, March 7, 2017, ECF No. 84).   Defendant rendered an objection to this testimony as being overly broad and possible encompassing "everything that appears on the credit report was put on there by QAR.  (*Id.* at 52:22-25).   In response to Defendant's objection, the Court noted that it believed that the "questions were directed to QAR's entry" but suggested clarification for the record.  (*Id.* at 53:2-6).   Subsequent questioning of Mr. Loftis elicited testimony to evince that the information contained on Plaintiff's credit report from May 23, 2015 reflecting the 7 QAR accounts/trade-lines was "all information that's been reported by Quality Asset Recovery to the credit reporting agencies." (*Id.* at 56:1-7).   A further objection was made by Defendant's counsel at which time the Court interceded to clarify Mr. Lotfis' testimony.

> THE COURT:   Excuse me.   Excuse me.   The seven lines you just identified, the information contained in each one of those entries would have been generated by QAR?
>
> THE WITNESS:  Yes, Your Honor.

(Trial Tr. 56:18-21, March 7, 2017, ECF No. 84).

Evidently satisfied that the point had been clarified for the record, and that any ambiguity in Mr. Loftis' testimony as to the credit reporting by QAR of information to the credit reporting agencies and the information contained within the trade-lines reflecting Plaintiff's putative accounts with QAR, the Court instructed Plaintiff's counsel to "move ahead" with his examination.  (See Trial Tr. 56:22, March 7, 2017, ECF No. 84).

viii.    Under examination from his own counsel, Mr. Loftis confirmed that the phrase "trade-line" means the information that QAR provides to the credit reporting agencies.  (Trial Tr. 104:16-19, March 7, 2017, ECF No. 84).

ix.    Under examination from his own counsel, Mr. Loftis confirmed that only the information that QAR provides constitutes QAR's trade-line.  (Trial Tr. 104:20-22, March 7, 2017, ECF No. 84).

x.    Under examination from his own counsel, Mr. Loftis confirmed that when QAR credit reports a trade-line, QAR reports the account number, the creditor, QAR's identifying information and the balance that's due.  (Trial Tr. 105:3-7, March 7, 2017, ECF No. 84).

**C.  QAR's accounts/trade-lines reflected on Plaintiff's Credit Report dated May 23, 2015 post-date Plaintiff's dispute to QAR of October 2014 but do not reflect that the accounts/trade-lines were disputed**

It is unrefuted that Plaintiff's Experian credit report dated, May 23, 2015, (i.e., Plaintiff's Exhibit 6), which reflects that it was last *reported* "May 2015" does not reflect that the multiple accounts, or trade-lines, were being reported as disputed.  (See Trial Exhibit 6, ECF No. 64-3).

As noted above, the cases on which Defendant rested its assertion that it was entitled to judgment as a matter of law held that there exists no affirmative duty to report the disputed status

of a debt after the debt has been reported.   None of those cases relied upon by Defendant, however, support Defendant's position; unlike in the present case, the defendants in the cited cases did nothing to report the debts after receiving notice of the dispute.   In the present case, however, and as freely and repeatedly admitted by Defendant, QAR continued to report Plaintiff's debts on a monthly basis.   It is this *election* to *continue* to report Plaintiff's debts to the credit reporting agencies that is fatal to Defendant's motion for judgment as a matter of law and justifies the verdict in Plaintiff's favor returned by the jury at the conclusion of the trial.

1. **The evidence from the trial shows that Defendant elected to continue to report the trade-lines to the CRAs.**

It is undisputed that evidence exists to show credit report updates on the QAR trade-lines. Indeed, Exhibit 6 shows "Last Reported May 2015" and lists each trade-line as having a past due balance as of "May 2015".

After the lunch break on the second day, Mr. Loftis retook the witness stand and attempted to reverse his testimony.   But, notwithstanding Defendant's patent attempt to reverse his testimony and potentially exculpate Defendant from liability under §1692e(8), at worst the subsequent testimony by Mr. Loftis serves only as *contradicted* and *impeached* testimony from an *interested* witness.

As the court in *Lamonica* noted, in deciding a motion for judgment as a matter of law, one must only "give credence to...that evidence supporting the moving party that is *uncontradicted* and *unimpeached*, at least to the extent that [it] comes from *disinterested* witnesses"; however, we will "disregard **all** evidence favorable to the moving party that the jury is not required to believe."   (Emphasis added) *Lamonica v. Safe Hurricane Shutters, Inc.,* 711 F.3d 1299 (11th Cir. 2013) citing to *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1211 (11th

Cir.2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

## 2. Even if Defendant's contention that its only post-dispute monthly reporting was limited to reporting the trade-lines as active, Defendant remains liable for violating §1692e(8).

Even assuming, *arguendo*, that when it communicated information to the CRAs after Plaintiff's dispute, Defendant only reported that the accounts were active, this acknowledgement by Defendant is sufficient to sustain a verdict of Defendant's liability under §1692e(8).

In evaluating Defendant's contention, one must consider what the reporting of the account as being "active" communicates to the third-party to which the information is being reported. First and foremost, it communicates that the debt remains unpaid! Indeed, QAR's admitted reporting of the trade-lines as "active" effectively reported that the accounts remained in collections, that the accounts had not been paid, that the balances remained outstanding, and that the accounts should not be deleted. This is further borne out by Defendant's testimony of the action it took to ultimately delete the trade-lines wherein it communicated to the CRAs that the debts were not owed, that the balances did not remain outstanding, and that the debts should be deleted.

But, despite Defendant's contentions to the contrary, that is not all that was reported by QAR. With 14 years of experience reporting credit information to the credit reporting agencies, and having been provided with a copy of Exhibit 6 for review, and having been asked multifarious times about the information reflected on the QAR trade-lines on Plaintiff's Experian credit report dated May 23, 2015, Mr. Loftis repeatedly verified that the information represented on the credit report, which had been admitted into evidence, was information reported by QAR to the credit reporting agencies, both in response to questioning from Plaintiff's counsel and

questioning by this Court.   The content of the credit report in conjunction with Mr. Loftis's

confirmatory testimony unequivocally evinces that QAR communicated credit information

regarding Mr. Spina's seven (7) QAR accounts to the credit reporting agencies in May 2015.

Indeed, by his own testimony, Mr. Loftis acknowledged that QAR communicated information

regarding Mr. Spina's seven (7) QAR accounts to the credit reporting agencies on a monthly

basis.

> **3.  The obligation to report a dispute exists after even after a debt has been reported if the debt collector elects to take affirmative action to continue reporting the debt.**

In its oral motion for directed verdict, Defendant argued that "the obligation to report a

dispute to a credit reporting agency under e(8) exists only if the debt collection agency has not

already reported the account to a credit reporting agency.  (See Trial Tr. 85:9-13, March 7, 2017,

ECF No. 84).  This is patently false and unsupported by any of the cases posited by Defendant or

relied upon by this Court in granting Defendant's motion for judgment as a matter of law.

Indeed, as noted by the court in *Wilhelm,* §1692e(8) of the FDCPA "is rooted in the basic

fraud law principle that, if a debt collector *elects* to communicate "credit information" about a

consumer, **it** *must not omit a piece of information that is always material, namely, that the*

*consumer has disputed a particular debt*."  *Wilhelm* at 418.

The court did not limit the principle to pre-dispute reporting; rather, the court held that if

and when a debt collector elects to report credit information to the credit reporting agencies it

*must* report the disputed status of the debt.

In the present case, Defendant voluntarily elected to continue to report credit information;

Mr. Loftis unequivocally testified that QAR updates the credit reports each month.  (Trial Tr.

132:22, March 7, 2017, ECF No. 84).  When asked to clarify, Mr. Loftis confirmed that the

account information is still uploaded to the credit reporting agencies to show that the account is still active. *Id.* at 132:25, 133:1). As previously noted by Mr. Loftis, when QAR uploads information to the credit reporting agencies through its batch process, it reports the account number, the creditor, QAR's identifying information and the balance that's due. Whether the information has changed or not, the information being reported *is* credit information. QAR is communicating credit information to a third party – something it *elected* to do on a monthly basis.

Defendant has tacitly argued that any information that it may have reported to the credit reporting agencies is not "credit information". Though this contention has been dispelled above, taking this one step further, it is axiomatic that in order for QAR to report any information to the credit reporting agencies regarding an account, even if to simply report the account as active, as Defendant would have this Court believe, it necessarily has to provide the credit reporting agencies with information essential to identify the debt and the accounts that it is reporting.

So, at a minimum QAR has continued to report to the credit reporting agencies that Mr. Spina still owes a debt; it is hard to imagine under what circumstances this information would not be considered credit information being reported by the debt collector to a third party.

Indeed, the FDCPA defines communication as "the conveying of information regarding a debt." There is no distinction in the statute or any case law to hold that the information being conveyed at any given time be different, modified, updated or changed. Simply stated, when a debt collector conveys information regarding a debt, it is deemed to have "communicated" that information. So, when Defendant updated its reporting of Plaintiff's QAR accounts, it "communicated credit information" and failed to "communicate that a disputed debt is disputed."

16

**4. Post-dispute debt collection communications violate §1692e(8) if the dispute is not also communicated**

The present case is similar to *Irvine v. I.C. System, Inc.*, 176 F.Supp.3d 1054 (D.Colo. 2016). That court, when determining whether the defendant debt collector's post-dispute communications were "in connection with the collection of a debt", relied on *Llewellyn* to conclude that they were. The court highlighted that in *Llewellyn v. Allstate Home Loans, Inc.,* "a debt collector does not have an affirmative duty to notify [credit reporting agencies] that a consumer disputes the debt *unless* the debt collector knows of the dispute and **elects** to report to a [credit reporting agency]." *Irvine* at 1063 (quoting *Llewellyn*, 711 F.3d 1173, 1189 (10th Cir. 2013) (emphasis in original).

In *Irvine*, after the debt collector was found to have been notified of a dispute to the debt, it communicated with the CRAs providing plaintiff's address, account number, creditor name, balance, and other related information. *Id*. at 1063. The court concluded that in the course of providing the updated information to the CRAs regarding the plaintiff's debt, the defendant violated § 1692e(8) when it did not include the "material" information that the account was disputed. *Id*. at 1063-64 (citing *Llewellyn*, 711 F.3d at 1189, quoting *Wilhelm*, 519 F.3d at 418).

The *Irvine* court's authority for this position was found not only in *Llewellyn*, but in a case where a debt collector simply sent a letter to the creditor regarding the plaintiff's account. *Irvine*, at 1065 (citing *Baker v. I.Q. Data International, Inc*., 2015 WL 1945148 (D.Colo April 29, 2015)). The *Baker* defendant argued that the letter "was not sent in connection with the collection of the debt because it was merely a remittance sent to [the creditor] to allow [the creditor] to update its records as to the amount outstanding.'" *Irvine*, at 1065, quoting *Baker*, at *4. The *Baker* court found no legitimate purpose for such a letter other than being in connection with the collection of a debt under 15 U.S.C. § 1692e. *Irvine*, at 1065, quoting *Baker*, at *5.

Therefore the defendant's failure to include that the account was disputed violated the FDCPA. *Baker* at \*4.

Similarly, in the instant case, the characterization of Defendant's post-dispute communications with the CRAs as "batch reporting" does not negate the fact that after having been notified of a dispute, Defendant voluntarily elected, at a minimum, to communicate information about the status of Plaintiff's alleged debt, *to wit*, that it was still active, without updating the report to reflect the disputed nature thereof.

When Defendant communicated to the CRA about Plaintiff's credit information without disclosing the dispute it violated the FDCPA. See *Vernot v. Pinnacle Credit Servs., LLC,* 2017 WL 384327, (E.D. N.Y., Jan. 26, 2017) (disputing a debt "prevents debt collectors from 'communicat[ing] the debtor consumer's credit information to others without disclosing the dispute'"), quoting *Hooks v. Forman, Holt, Eliades & Ravin, LLC,* 717 F.3d 282, 285 (2d Cir. 2013).

## IV.    CONCLUSION

The issue raised by Defendant in its motion for judgment as a matter of law is predicted on a factual dispute. As delineated in detail above, there was a plethora of evidence introduced at trial that QAR voluntarily elected to report credit information to the CRAs after receiving notice of Plaintiff's dispute. In considering a motion for judgment as a matter of law, a court is not permitted to make credibility determinations or weigh the evidence. Rather, a court is required to consider all of the evidence and the inferences drawn therefrom, in the light most favorable to the nonmoving party. There is no dispute that Defendant voluntarily elected to monthly report Plaintiff's debts, even after Plaintiff disputed the debts, and that Defendant failed to report the accounts as having been disputed.

Indeed, as this Court acknowledged: "It seems to me if the collection agency reports to one of these CRAs that the account remains active, that the debt is active, after a point in time where they have – the account has become disputed, I think it arguably falls within e(8)."  In the light most favorable to Plaintiff, Defendant's motion for judgment as a matter of law should have been denied; hence, Plaintiff respectfully requests that this Honorable Court enter an order altering the judgment and reinstating the judgment in favor of Plaintiff as to his claim under §1692e(8).

WHEREFORE, Plaintiff, JOSEPH SPINA, respectfully requests that this Honorable Court enter an order granting Plaintiff's motion as delineated above.

Respectfully submitted,
**JOSEPH SPINA**


By:     s/ David M. Marco
              Attorney for Plaintiff


Dated: June 23, 2017


David M. Marco (FL. Bar No.: 125266)
SMITHMARCO, P.C.
55 West Monroe Street, Suite 1200
Chicago, IL 60603
Telephone:   (312) 546-6539
Facsimile:   (888) 418-1277
E-Mail:        dmarco@smithmarco.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| **JOSEPH SPINA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **8:15-cv-02155-CEH-TBM** |
| | ) | |
| **v.** | ) | |
| | ) | **Magistrate Judge McCoun** |
| **QUALITY ASSET RECOVERY, LLC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CERTIFICATE OF SERVICE**

**To:**   Dale Golden                                    Charles  McHale
          Golden Scaz Gagain, PLLC                Golden Scaz Gagain, PLLC
          201 North Armenia Avenue              201 North Armenia Avenue
          Tampa, FL 33609                             Tampa, FL 33609

     I, David Marco, an attorney, certify that I shall cause to be served a copy of **Plaintiff's Rule 59 Motion** upon the above named individual(s) by: depositing same in the U.S. Mail box, prior to 5:00 p.m. on **June 23, 2017**, postage prepaid; messenger delivery; Federal Express; facsimile transmitted from (888) 418-1277; email; and/or electronically via the Case Management/Electronic Case Filing system ("ECF"), as indicated below.

          _____ U.S. Mail                              _____ Facsimile
          _____ Messenger Delivery               _____ Email
          _____ Federal Express/UPS            __X__ ECF

                              By:   ___s/ David M. Marco_____
                                      Attorney for Plaintiff

Dated: June 23, 2017

David M. Marco (FL. Bar No.: 125266)
SMITHMARCO, P.C.
55 West Monroe Street, Suite 1200
Chicago, IL 60603
Telephone:  (312) 546-6539
Facsimile:  (888) 418-1277
E-Mail:      dmarco@smithmarco.com